United States District Court<br>Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **LADENA MARIA STEPHENS,** | Case No.  14-cv-02484-YGR |
| Plaintiff, | |
| v. | **ODER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** |
| **CAROLYN W COLVIN, ACTING COMMISIONER OF SOCIAL SECURITY,** | Re: Dkt. Nos. 20, 26 |
| Defendant. | |

On May 29, 2014, plaintiff Ladena Maria Stephens filed this action seeking judicial review of Administrative Law Judge ("ALJ") Amita B. Tracy's decision finding she was not disabled under Sections 216(i) and 223(a) of the Social Security Act.  Pending before the Court are the parties' cross-motions for summary judgment.  (Dkt. Nos. 20, 26.)  Stephens argues that the ALJ erred by:  (i) failing to take into account certain aspects of plaintiff's 2007 finding of non-disability when it determined her mental health and residual functional capacity; (ii) improperly discrediting the opinions of her treating physician, Dr. Hefner; (iii) improperly discrediting the opinions of examining rheumatologist, Dr. Gratton; (iv) improperly discrediting Stephens's testimony; and (v) improperly relying on hypotheticals posed to a vocational expert that did not reflect Stephens's limitations.  Based thereon, plaintiff argues that a remand for an award of benefits is proper.

Having carefully considered the papers submitted and the pleadings in this action, and for the reasons set forth below, the Court hereby **GRANTS IN PART** plaintiff's motion for summary judgment and **DENIES IN PART** defendant's cross-motion for summary judgment.

## I.   PROCEDURAL BACKGROUND

Plaintiff filed an application for supplemental security income benefits ("SSI") pursuant to Title XVI of the Social Security Act ("SSA") on January 28, 2010, alleging that she became disabled on September 24, 2001.  (Record at 181.)  Plaintiff later amended her disability onset date to January 28, 2010.  (*Id.* at 20.)  The agency denied plaintiff's application initially and again on reconsideration. On August 22, 2012, plaintiff appeared with counsel to testify at a hearing before the ALJ.  (*Id.* at 37-59.)  On September 4, 2012, the ALJ issued her decision finding that plaintiff is not disabled within the meaning of the SSA.  Plaintiff appealed that decision to the Appeals Council, which denied review, rendering the ALJ's decision final.  Plaintiff then filed the instant action, which became ripe for decision on March 30, 2015.

## II.   APPLICABLE LEGAL STANDARDS

This Court has jurisdiction under 42 U.S.C. section 405(g).  The Court may reverse the ALJ's decision only if it "contains legal error or is not supported by substantial evidence."  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (internal citations omitted).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  It is "more than a mere scintilla but less than a preponderance."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005).  Where the evidence is susceptible to more than one rational conclusion, the Court must uphold the ALJ.  *Burch*, 400 F.3d at 679.

The SSA uses a five-step sequential framework to determine whether a claimant is disabled.  At Step One, the ALJ must determine whether the claimant is engaged in substantial gainful activity.  20 C.F.R. § 404.1520(b).  A person is involved in substantial work activity if she engages in work that involves significant physical or mental activities.  20 C.F.R. § 404.1572(a).  Gainful work activity is defined as "work usually done for pay or profit," regardless of whether the claimant receives a profit.  20 C.F.R. § 404.1572(b).  If the claimant is engaged in substantial gainful activity, she is not disabled.  If the claimant does not engage in substantial gainful activity, then the ALJ proceeds to Step Two of the evaluation.

At Step Two, the ALJ must determine whether the claimant has an impairment or

United States District Court
Northern District of California

combination of impairments that is severe.  20 C.F.R. § 404.1520(c).  A "severe" impairment is defined in the regulations as one that significantly limits an individual's ability to perform basic work activities.   If the claimant does not have a severe impairment or combination of impairments, she is not disabled.  If the claimant does have a severe impairment or combination of impairments, then the ALJ proceeds to Step Three.

At Step Three of the sequential evaluation, the ALJ must determine whether a claimant's impairment or combination of impairments "meets or equals" the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1.  20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526.  If the claimant's impairment or combination of impairments meets the criteria of a listing and the duration requirement, the claimant is disabled.  20 C.F.R. § 404.1509.  If the impairment or combination of impairments does not meet the criteria of a listing or does not meet the duration requirement, the ALJ proceeds to the next step.

Before reaching Step Four in the sequential evaluation, the ALJ must determine the claimant's residual functional capacity ("RFC").  20 C.F.R. § 404.1520(e).  A claimant's RFC consists of her ability to engage in physical and mental work activity on an ongoing basis, in spite of any limitations from impairments.  The ALJ considers both severe and non-severe impairments in determining the claimant's RFC.  20 C.F.R. §§ 404.1520(e), 404.1545.

At Step Four, the ALJ must determine whether the claimant has the RFC to perform past relevant work.  20 C.F.R. § 404.1520(f).  If the claimant has the RFC to perform past relevant work, she is not disabled.  If the claimant is unable to do past relevant work or has no past relevant work, the ALJ proceeds to the final step in the sequential evaluation.

At Step Five, the ALJ considers the claimant's RFC, age, education, and work experience in determining whether the claimant can perform any other work besides past relevant work.  20 C.F.R. § 404.1520(g).  If the claimant can perform other work, she is not disabled.  If the claimant cannot perform other work and fulfills the duration requirement, she is disabled.

## III.   ADMINISTRATIVE RECORD AND FRAMEWORK

### A.     The ALJ's Decision

Plaintiff had previously been found non-disabled in 2007, after having filed applications

United States District Court
Northern District of California

United States District Court
Northern District of California

for a period of disability and disability insurance benefits and supplemental security income on August 17, 2004.  In the 2004 applications, plaintiff alleged disability since September 24, 2001. The first ALJ rendered an unfavorable decision dated April 13, 2007, finding that plaintiff had the residual functional capacity for less than the full range of light work, subject to specified limitations.  Although he found that plaintiff could not perform her past work, she could do other work that exists in significant numbers in the national economy and was therefore not disabled. (Record at 21; 102-110.)

The second ALJ found that due to changed circumstances, the presumption that plaintiff continued to be nondisabled based on the 2007 decision did not apply to her 2010 applications. (Record at 21.)  Namely, finding that plaintiff had advanced in her age category, the ALJ determined that plaintiff had rebutted the presumption of continuing non-disability.  Having so concluded, the second ALJ then undertook to evaluate plaintiff's claim.

In a ten-page decision, the ALJ applied the five-step sequential analysis to determine whether Plaintiff was disabled and eligible for disability insurance benefits.  (Record at 20-29.)

At Step One, the ALJ determined that Plaintiff was "not engaged in substantial gainful activity since January 19, 2010, the alleged onset date."  (Record at 23.)

At Step Two, the ALJ determined that Plaintiff "has the following severe impairments: fibromyalgia[1]; degenerative disc disease of the lumbar spine; low back pain; and carpal tunnel

_____

[1] The Ninth Circuit has explained fibromyalgia as follows:

> [F]ibromyalgia, previously called fibrositis, [is] a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue.  *See, e.g., Lang v. Long–Term Disability Plan of Sponsor Applied Remote Tech, Inc.*, 125 F.3d 794, 796 (9th Cir. 1997); *Brosnahan v. Barnhart*, 336 F.3d 671, 672 n. 1 (8th Cir. 2003).  Common symptoms [. . .] include chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue associated with this disease.  *See Brosnahan*, 336 F.3d at 672 n. 1; *Cline v. Sullivan*, 939 F.2d 560, 563 (8th Cir. 1991).  Fibromyalgia's cause is unknown, there is no cure, and it is poorly-understood within much of the medical community. The disease is diagnosed entirely on the basis of patients' reports of pain and other symptoms.  The American

4

1    syndrome (CTS), status post right carpal tunnel release on October 27, 2011 (right-hand

2    dominant)." (*Id.*)  The ALJ noted that these impairments cause plaintiff significant limitations in

3    her ability to perform basic work activities.  (*Id.*)  The ALJ further found plaintiff to suffer from

4    the following nonsevere impairments:  "type 2 diabetes (diagnosed in 2004, still refusing to start

5    insulin as of 2/12/2012 [. . .]), asthma, obesity, hypothyroidism, right hepatic mass [. . .], and

6    depression (in complete remission [. . .]." (*Id.*)

7        Next, the ALJ undertook to evaluate the severity of plaintiff's mental impairments to

8    determine whether, considered singly or in combination, they meet or medically equal the criteria

9    of listing 12.04.  On this score, the ALJ found that Plaintiff did not have "an impairment or

10   combination of impairments that meets or medically equals one of the listed impairments" under

11   the regulations.  (Record at 23-24.)  To arrive at this conclusion, the ALJ considered whether

12   plaintiff's mental impairments resulted in at least two of the following:  (i) marked restriction of

13   activities of daily living; (ii) marked difficulties in maintaining social functioning; (iii) marked

14   difficulties in maintaining concentration, persistence, or pace; or (iv) repeated episodes of

15   decompensation, each of extended duration.  (*Id*. at 24.)  The ALJ found that plaintiff did not

16   suffer from "marked difficulties" in any of the four above areas.  Rather, she found that plaintiff

17   had moderate restriction in activities of daily living, mild difficulties with respect to both social

18   functioning, and concentration, persistence, or pace, and no episodes of decompensation.

19       The ALJ then made a determination regarding plaintiff's RFC, considering "all symptoms

20   and the extent to which these symptoms can reasonably be accepted as consistent with the

21   objective medical evidence and other evidence." (*Id.*)  The ALJ specifically noted that when

22   considering plaintiff's symptoms, she "must follow a two-step process." (*Id.*)  First, the ALJ

23   must determine "whether there is an underlying medically determinable physical or mental

24

25   ─────────────────────────────

26        College of Rheumatology issued a set of agreed-upon diagnostic
     criteria in 1990, but to date there are no laboratory tests to confirm
27   the diagnosis.  *See Jordan v. Northrop Grumman Corp.*, 370 F.3d
     869, 872 (9th Cir. 2004); *Brosnahan*, 336 F.3d at 672 n. 1.

28   *Benecke v. Barnhart*, 379 F.3d 587, 589-90 (9th Cir. 2004).

*United States District Court*
*Northern District of California*

impairment . . . that could reasonably be expected to produce the claimant's pain or other symptoms." (*Id*.) "Second, once an underlying physical . . . impairment that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning." (*Id*. at 25.) If the claimant's stated intensity, persistence, or functionally limiting effects of pain are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the statements based on a consideration of the entire case record. (*Id*.)

Ultimately, the ALJ determined that plaintiff had the capacity to perform light work as defined in 20 C.F.R. section 416.967(b) except: occasional climbing of ramps or stairs; no climbing of ladders, ropes or scaffolds; frequent balancing; occasional stooping, kneeling, crouching or crawling; simple repetitive tasks; and the need to use a single-point cane for ambulation, but can use the free hand to carry small objects. (*Id*. at 24.)

In making this RFC determination, the ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," including opinion evidence. (*Id*.) Although plaintiff testified that due to the effects of her fibromyalgia and mental health disorder, "she has pain every day and it lasts for hours," the ALJ found that plaintiff lacked credibility as to the "intensity, persistence, and limiting effects" of her symptoms. (*Id*. at 25-26.) In reaching this conclusion, the ALJ noted that plaintiff is independent in self-care and activities of daily living. (*Id*. at 26.) The ALJ further noted that although plaintiff had been advised by her doctors to exercise and lose weight, she had stopped going to physical therapy and her mental health therapist, and her compliance with medical treatment had varied. (*Id*.)

In making the RFC determination, the ALJ gave "little weight" to the opinion of plaintiff's treating physician, Dr. Hefner, and the opinion of Dr. Gratton, a rheumatologist, who jointly completed and signed a medical source statement on plaintiff's fibromyalgia condition and opined that she suffered from myriad limitations. (*Id*. at 27.) For example, the doctors opined that plaintiff's symptoms would improve if she follows fibromyalgia treatment, although they also

6

United States District Court
Northern District of California

1    stated that her condition had lasted and could be expected to last for at least twelve months.  (*Id*. at

2    27; 1287.)  They further noted that her symptoms included multiple tender points, chronic fatigue,

3    morning stiffness, subjective swelling, [irritable bowel syndrome], headaches, numbness and

4    tingling, depression, hypothyroidism, and carpal tunnel syndrome.  (*Id*. at 27.)  They stated that

5    plaintiff can walk one block without rest or severe pain, sit for 30 minutes at a time, stand for 5-10

6    minutes at a time, sit for four hours in an 8-hour workday, and stand or walk for less than two

7    hours in an 8-hour workday.  (*Id*.)  They further opined that she must use a cane while engaging in

8    occasional standing or walking, and would need to take breaks.  (*Id*.)  The ALJ noted that Dr.

9    Gratton had seen plaintiff only one time and that the prognosis was "improved if follows

10   fibromyalgia treatment."  (*Id*.)  She further noted that "the history was 'per patient,' because Dr.

11   Hefner does not perform functional witnessed assessment as part of her practice."  (*Id*. (quotation

12   in original).)

13         In contrast, the ALJ considered and accorded "great weight" to the opinions of internal

14   medicine consultative examiner, Dr. Schwartz.  Dr. Schwartz evaluated plaintiff once and

15   diagnosed plaintiff with lower back and lower extremity pain, likely secondary to degenerative

16   joint disease and fibromyalgia.  (Record at 394-398.)  He further noted that plaintiff has decreased

17   range of motion in her lumbar spine, based on both his examination and x-rays from September

18   2001, which showed narrowing in her lumbar disc space.  He opined that the decreased range of

19   motion in plaintiff's shoulder was likely due to fibromyalgia. Ultimately, Dr. Schwartz opined that

20   plaintiff can stand and/or walk for six hours, had no limits in sitting, had no limitations in the

21   ability to lift or carry, and could do occasional stooping, kneeling, crouching, and crawling, and

22   frequent reaching.  (*Id*. at 26.)

23         The ALJ also gave "great weight" to State agency doctor, Dr. Eskander, who found that

24   plaintiff was able to do less than the full range of light work.  (*Id*. at 26; 402-406.)  The ALJ also

25   considered the fact that Dr. Eskander had noted that his findings did not show significant changed

26   circumstances since plaintiff's 2007 non-disability determination.  (*Id*. at 26.)

27         Having made the RFC determination, the ALJ proceeded to Step Four and evaluated the

28   Plaintiff's documented vocational background, her testimony, and the testimony of a vocational

1   expert, and determined that there are jobs that exist in significant numbers in the national economy

2   that plaintiff can perform.  (*Id.* at 28.)

3       At Step Five, the ALJ held that, Plaintiff was not under a disability, as defined in the

4   Social Security Act, from January 19, 2010 to the date of the ALJ's decision.

5   **IV.   DISCUSSION**

6       As outlined above, Stephens argues that the ALJ erred by: (A) failing to take into account

7   certain aspects of plaintiff's 2007 finding of non-disability when it determined her mental health

8   and residual functional capacity; (B) improperly discrediting the opinions of her treating

9   physician, Dr. Hefner; (C) improperly discrediting the opinions of examining rheumatologist, Dr.

10  Gratton; (D) improperly discrediting Stephens's testimony; and (E) improperly relying on

11  hypotheticals posed to a vocational expert that did not reflect Stephens's limitations.  Based

12  thereon, plaintiff argues that a remand for an award of benefits is proper.

13      In opposition, the Commissioner argues that the ALJ properly considered the previous

14  decision, determined plaintiff's RFC after having appropriately considered opinions and plaintiff's

15  subjective testimony, and that the ALJ properly considered vocational expert testimony.  The

16  Commissioner maintains that should the ALJ be found to have erred, remand for further

17  administrative proceedings, rather than an award of benefits, is proper.  The Court considers each

18  of these five arguments in turn.

19      **A.  Application of Res Judicata to 2007 Decision**

20      Plaintiff maintains that the ALJ should have given preclusive effect to one aspect of the

21  2007 RFC determination under *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988).  Specifically,

22  plaintiff contends that the following by the first ALJ should have been binding on the second ALJ.

23  That finding was:

24
25          Claimant's preoccupation with her medical disorders also causes a
            mild loss of concentration, persistence or pace that equates to about
26          85% ability to perform work activity when compared to an
            employee who performs at 100%.  (Record at 109.)
27
28      Plaintiff contends that had this finding been given preclusive effect, the second ALJ would

United States District Court
Northern District of California

8

have been required to find her disabled.

The 2007 adverse determination creates a presumption that plaintiff continues not to be disabled. *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988). In order to "overcome the presumption of continuing non-disability arising from the first administrative law judge's findings of non-disability," the claimant "must prove 'changed circumstances' indicating a greater disability." *Id.*; *see also* Social Security Acquiescence Ruling ("AR") 97–4(9), 1997 WL 742758 ("A claimant may rebut the presumption by showing a 'changed circumstance' affecting the issue of disability with respect to the unadjudicated period, *e.g.*, a change in the claimant's age category under 20 CFR 404.1563 or 416.963, an increase in the severity of the claimant's impairment(s), the alleged existence of an impairment(s) not previously considered, or a change in the criteria for determining disability."). The ALJ properly found that plaintiff, in the intervening years, has changed age category to "closely approaching advanced age." (Record at 28.)

However, where, as here, plaintiff overcomes the presumption of non-disability, prior determinations of RFC, education, and work experience are *res judicata* in the subsequent proceeding absent "new and material" evidence on those issues. *Chavez*, 844 F.2d at 694. "Adjudicators must adopt such a finding from the final decision on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding." AR 97–4(9).

Plaintiff's argument rests on her contention that the first ALJ found that plaintiff would be "off task" 15% of the time. (*See* Reply at 3.) From this premise, she reasons that testimony elicited from the vocational expert in her most recent ALJ hearing conclusively establishes that she is disabled. There, the vocational expert was asked whether "if the claimant were off task 15 percent of the time, would that change your previous testimony?" The expert responded, "It would preclude all work." (Record at 57.)

Plaintiff's premise, however, is flawed. The first ALJ did *not* find that plaintiff would be off task 15% of the time. Rather, the first ALJ found that plaintiff suffered from a mild loss of concentration, persistence, or pace in completing tasks, which "equates to about 85% ability to

perform work activity." (Record at 109.) Plaintiff argues that these two things are the same: "if a claimant has about an 85% ability to perform work activity, that claimant will be off task 15 percent of the time." (Reply at 3.) The Court is not convinced. First, plaintiff cites no authority for her statement that "concentration, persistence, or pace" relates to being either on or off task. Second, the Court finds that read straightforwardly, a person who demonstrates reduced "concentration, persistence, or pace" is not necessarily "off task." Put differently, being "off task" and an inability to maintain "concentration, persistence or pace" are not the same thing. A person could be focused on the task at hand for an entire hour, for example, and complete only 85% of a project due to reduced pace; this does necessarily mean that the person was "off task" for 15% of the time. While it is true that an inability to concentrate may imply that one is off task at times, the first ALJ's finding was not based solely on an inability to concentrate. Critically, the existence of the term "pace" in the earlier ALJ's finding allows room for a claimant to be focused and on task, but simply slower than other employees. Accordingly, in responding only to the notion of plaintiff being "off task," the vocational expert did not provide an opinion as to the first ALJ's finding.

In sum, plaintiff has not persuasively argued that the finding of the first ALJ compels a finding of non-disability based on the vocational expert's conclusion that being off task 15% of the time would preclude all work. Defendant's cross-motion for summary judgment on this ground is **GRANTED**.

### B. Discrediting Treating Physician, Dr. Hefner

Plaintiff argues that the ALJ erred by assigning "little weight" to the opinions of plaintiff's treating physician, Dr. Hefner. (Mot. at 14–20.) Dr. Hefner's opinions are set forth in a Medical Source Statement, which rheumatologist Dr. Gratton also signed. (Record at 1287-1290.) That document does not clearly delineate between what may be considered Dr. Gratton's opinion and what is Dr. Hefner's opinion. Rather, the form appears to have been completed jointly and signed by both. Upon review of the record and the ALJ's decision, this Court finds that the ALJ's decision to accord only "little weight" to Dr. Hefner's opinion was not sufficiently supported by specific and legitimate reasons.

United States District Court
Northern District of California

"The medical opinion of a claimant's treating physician is entitled to 'special weight.'" *Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989) (quoting *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988)).  The rationale for giving greater weight to a treating physician's opinion is that he is employed to cure and has a greater opportunity to know and observe the patient as an individual.  *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987) (citations omitted).  The Ninth Circuit requires that an ALJ defer to a treating doctor's opinion, even if controverted by another doctor, unless the ALJ makes findings setting forth specific, legitimate reasons for rejecting it that are based on substantial evidence in the record.  *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 92 (9th Cir. 2009); *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1198 (9th Cir. 2008); *Orn*, 495 F.3d at 632.  The ALJ can "meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  Importantly, "the ALJ must do more than offer his conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors', are correct."  *Embrey*, 849 F.2d at 421–22.

At the outset, the Court observes that the ALJ's decision consists mainly of reporting straightforwardly – notably, without analysis – the Dr. Hefner's recorded opinions.  These opinions touched on a wide variety of physical activities, for example:  the amount of time plaintiff can stand, how long she can walk without rest or severe pain, how long she can sit, and whether she required a cane to stand or walk.  (*See, e.g.*, Record at 27.)  In effect, the ALJ merely reproduces the substance of the medical source statement form.  Absent from the bulk of the ALJ's discussion is any interpretation of what this information means or how it interacts with other record evidence.

For example, there is one paragraph purporting to set forth the ALJ's findings with respect to Dr. Hefner's opinion.  After reciting the record evidence, the ALJ offered the following single sentence:  "This is given little weight as it appears that claimant saw Dr. Gratton for only one visit and the prognosis was 'improved if follows fibromyalgia treatment.'"  (*Id*. at 27 (quotation in original).)  This sentence, like those that came before it, is lacking in terms of analytical support or

United States District Court
Northern District of California

1  interpretation.  The ALJ has offered no explanation for why either stated basis supports her

2  decision to accord only little weight to Dr. Hefner's opinion.  First, the Court cannot discern how

3  the fact of Dr. Gratton's one-time visit bears on Dr. Hefner's opinions as plaintiff's treating

4  physician.  Rather, it appears that the ALJ may have confused Dr. Hefner and Dr. Gratton.

5  Second, the ALJ provides no explanation for her conclusion that plaintiff's prognosis, which

6  necessarily relates to *future* events, bears on her claim that she has been disabled from January 19,

7  2010, through the date of the ALJ's decision.  Accordingly, neither of these reasons rises to a

8  "specific, legitimate" level.

9       One additional sentence possibly relates to the ALJ's decision to accord little weight to Dr.

10  Hefner's treating physician opinions.  That sentence reads: "It was noted that the history was "per

11  patient," because Dr. Hefner does not perform functional witnessed assessments as part of her

12  practice."  (Record at 27.)  As an initial matter, the Court has reviewed closely the medical source

13  statement and finds that more likely than not this sentence reflects Dr. Gratton's opinion, not Dr.

14  Hefner's, and that therefore the ALJ misconstrued the evidence.  (*See* Record at 1290 (notation

15  reflecting that the form was signed "for Dr. Hefner" by Dr. Gratton, and that the statement "I do

16  not perform functional witnessed assessments as part of my practice" is written in the same

17  handwriting).)  Regardless, the ALJ's conclusion suffers from a lack of analysis and interpretation

18  of the record.  Nowhere does the ALJ explain or interpret this information, nor does she relate that

19  to her ultimate finding.  Although one could speculate as to the import of this information, this

20  Court cannot affirm the ALJ on a ground upon which she did not rely.  *See Orn*, 495 F.3d at 630

21  (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).  While the Court is "not deprived

22  of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion," it may do

23  so only " if those inferences are there to be drawn." *Magallanes*, 881 F.2d at 755.  There is an

24  inference to be drawn that insofar as the ALJ found plaintiff only partially credible, she also found

25  that the doctor's opinions were less credible to the extent that such opinions rested on plaintiff's

26  subjective statements.  However, as discussed below, the Court finds that the ALJ's stated reasons

27  for discrediting plaintiff's subjective testimony are insufficient.

28

United States District Court
Northern District of California

1    Relatedly, it is unclear what information in the medical source statement the ALJ

2   determined to be reflective of Dr. Hefner's informed opinion, and what is "per patient." The

3   document itself is less than clear. For example, the document notes that certain answers are "per

4   patient," which suggests that others are reflective of the doctor's independent assessment and

5   opinion. Indeed, the parts of the form wherein Dr. Hefner opines that plaintiff's impairments have

6   lasted, or can be expected to last, at least twelve months, is not clearly noted as "per patient."

7   (Record at 1287.) In addition, the part of the form where the doctor confirmed that plaintiff's

8   "impairments ... as demonstrated by signs, clinical findings, and laboratory or test results [are]

9   ***reasonably consistent*** with the symptoms and functional limitations described above" appears to

10   call for Dr. Hefner's opinion as to whether plaintiff's diagnosed impairments resulted in her stated

11   degree of limitation. (*Id*. (emphasis in original).) The ALJ, however, has provided no

12   interpretation of the medical source statement or its relation to other record evidence, and offers no

13   findings as to what information therein reflects solely plaintiff's statements, and what is reflective

14   of Dr. Hefner's informed opinion as her treating physician.[2]

15   ————————————

16    [2] In her papers, the Commissioner argues that forms such as the medical source statement
    are disfavored, and that an ALJ may properly reject a physician's opinion when that opinion is

17   conclusory and is not supported by clinical findings. (Deft. Mot. at 10-12.) The Commissioner
    next provides analysis on the relative weight of medical opinions in the record, arguing that other

18   physicians' opinions, which are at odds with those of Drs. Hefner and Gratton, justify the ALJ's
    decision to discredit these physicians. In so arguing, the Commissioner strains to provide analysis

19   and justification where the ALJ did not. While the Court appreciates that the form supplied by
    Drs. Hefner and Gratton may arguably fall into this category and that other record evidence

20   conflicts with these doctors' opinions, it is the ALJ who is responsible for weighing the evidence,
    and making findings setting forth specific, legitimate reasons for rejecting a treating physician's

21   opinion. The Court cannot affirm the ALJ on a ground upon which she did not rely. *See Orn*, 495
    F.3d at 630 (citing *Connett*, 340 F.3d at 874). The ALJ decision does not provide a basis for

22   concluding that the doctors' submission was deficient in this manner, and accordingly, the Court
    cannot affirm the ALJ on this basis.

23

24    Separately, the Court notes that the ALJ "has a special duty to fully and fairly develop the
    record and to assure that the claimant's interests are considered. This duty exists even when the

25   claimant is represented by counsel." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983); *accord*
    *Garcia v. Commissioner*, 768 F.3d 925, 930 (9th Cir. 2014); *see also Smolen v. Chater*, 80 F.3d

26   1273, 1288 (9th Cir. 1996) ( "If the ALJ thought he needed to know the basis of Dr. Hoeflich's
    opinions in order to evaluate them, he had a duty to conduct an appropriate inquiry, for example,

27   by subpoenaing the physicians or submitting further questions to them. He could also have
    continued the hearing to augment the record.") (citations omitted). On remand, to the extent the

28

1    For the foregoing reasons, the Court finds that the ALJ has failed to "do more than offer

2    [her] conclusions." *Embrey*, 849 F.2d at 421–22. Plaintiff's motion is therefore **GRANTED** as to

3    this issue. On remand, the ALJ "must set forth [her] own interpretations and explain why they,

4    rather than the [doctor's], are correct." *Id.*

5    **C. Discrediting Examining Rheumatologist, Dr. Gratton**

6    Plaintiff argues that in discrediting Dr. Gratton's opinion as an examining rheumatologist,

7    the ALJ failed to provide sufficient justification. The Court agrees.

8    Where an examining physician's opinion is contradicted by another physician's opinion, in

9    this case, for example, Dr. Schwartz, an ALJ may not reject the opinion without "specific and

10   legitimate reasons that are supported by substantial evidence" in the record. *Garrison v. Colvin*,

11   759 F.3d 995, 1012 (9th Cir. 2014); *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). "This is

12   so because, even when contradicted, a treating or examining physician's opinion is still owed

13   deference and will often be 'entitled to the greatest weight ... even if it does not meet the test for

14   controlling weight.' " *Id.* (quoting *Orn*, 495 F.3d at 633).

15   Rheumatology is the relevant medical specialty for fibromyagia. *Benecke v. Barnhart*, 379

16   F.3d 587, 595 n.4 (9th Cir. 2004). "A rheumatologist's opinion is given greater weight than those

17   of the other physicians because it is an "opinion of a specialist about medical issues related to his

18   or her area of specialty." *Id.* (citing 20 C.F.R. § 404.1527(d)(5)). Specialized knowledge may be

19   particularly important with respect to a disease such as fibromyalgia that is poorly understood

20   within much of the medical community. *See id.* (citing *Sarchet v. Chater*, 78 F.3d 305, 306 (7th

21   Cir. 1996) (describing fibromyalgia as an "elusive and mysterious" disease)).

22   As set forth above, Dr. Gratton's opinions are contained in a Medical Source Statement,

23   which treating physician Dr. Hefner also signed. The ALJ provided two reasons for discrediting

24   Dr. Gratton's opinions: (i) the fact of that Dr. Gratton had seen the plaintiff for only one

25   evaluation, and (ii) Dr. Gratton's prognosis that fibromyalgia treatment could improve her

26   symptoms. As to the first issue of the single assessment, the Court notes that the ALJ accorded

27

28   ALJ determines that the Medical Source Statement provided by Drs. Hefner and Gratton contains
     ambiguities, it may be incumbent on the ALJ to further develop the factual record.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   "great weight" to the opinions of Dr. Schwartz, who also evaluated plaintiff only one time, and

2   who, unlike Dr. Gratton, has no documented specialty in the area of fibromyalgia.  In addition, the

3   fact of a one-time treatment, without more, is not a specific or legitimate reason for discrediting

4   Dr. Gratton's opinions.  By definition, an examining physician will have often evaluated a

5   claimant only one time.  Allowing the ALJ to discredit opinions on that basis "would have the

6   result of discrediting examining physician opinions practically as a matter of definition."  *Sorrell*

7   *v. Colvin*, No. 13-CV-04874-SI, 2015 WL 1152781, at *7 (N.D. Cal. Mar. 13, 2015) (citation

8   omitted).  Other district courts have found the fact a physician examined a claimant only once is

9   not a specific and legitimate reason to reject the opinion.  *See Belman v. Colvin*, 2014 WL

10  5781132, at *6 (C.D. Cal. Nov. 6, 2014) (finding pretense where the ALJ assigned little weight to

11  examining physician opinion based on one examination, but assigned great weight to two

12  physicians who did not examine plaintiff at all); *see also Sorg v. Astrue*, 2009 WL 4885184, at

13  *18 (W.D. Wash. Dec. 16, 2009) (noting that ALJ and Commissioner can "properly rely on the

14  findings and opinions of an examining medical source who has seen and evaluated a claimant only

15  one time").

16       As to the fact that plaintiff's symptoms could improve in the future, again, that does not

17  bear on the question of whether plaintiff was under disability from the date of onset to the time of

18  Gratton's evaluation, as a logical matter.  It is incumbent on the ALJ to provide "specific and

19  legitimate reasons" for rejecting the opinions of an examining physician.  Plaintiff's prognosis,

20  stated in conditional terms, is unrelated to the question of whether plaintiff has been disabled from

21  January 2010 to the date of Dr. Gratton's examination.  The ALJ has offered no explanation for

22  why the prognosis bears on the weight to be accorded to Dr. Gratton's opinions, and the Court can

23  independently discern none.

24       For these reasons, plaintiff's motion for summary judgment on this issue is **GRANTED**.

25       **D.  Credibility of Plaintiff's Testimony**

26       At the hearing with the ALJ, plaintiff testified that she "has pain every day and it lasts for

27  hours and lying down relieves the pain."  (Record at 25.)  The ALJ found plaintiff only partially

28  credible.  The ALJ's two main stated reasons for this finding were:  (1) plaintiff's activities of

daily living did not support her claimed level of disability, and (2) plaintiff's semi-compliance with her physicians' treatment recommendations.  (*See id.*)  Plaintiff argues that the ALJ's decision to discredit her was not based on clear and convincing reasons and therefore constitutes reversible error.  The Court first addresses the applicable standards for evaluating ALJs' credibility determinations, and then considers the sufficiency of each of the ALJ's reasons.

To assess a claimant's subjective testimony, an ALJ must engage in a two-step inquiry.  First, "the claimant 'must produce objective medical evidence of an underlying impairment' or impairments that could reasonably be expected to produce some degree of symptom."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281–82 (9th Cir. 1996)).  If the claimant does so, and there is no affirmative evidence of malingering, then the ALJ can reject the claimant's testimony as to the severity of the symptoms "only by offering specific, clear and convincing reasons for doing so."  *Id.* (citing *Smolen*, 80 F.3d at 1283–84).  "The clear and convincing standard is the most demanding required in Social Security cases."  *Garrison*, 759 F.3d at 1014 (citation omitted).

The ALJ "may find the claimant's allegations of severity to be not credible" but "must specifically make findings which support this conclusion."  *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991).  In other words, "[t]he ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion."  *Smolen*, 80 F.3d at 1284.  "These findings, properly supported by the record, must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain."  *Bunnell*, 947 F.2d at 345–46 (internal quotation marks and citation omitted).  The ALJ may consider inconsistencies between a claimant's testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which claimant complains.  *Thomas*, 278 F.3d at 958–59.

Here, the ALJ concluded that plaintiff had established that the first prong of the above test was met:  plaintiff had produced objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of symptom.  Thus, the parties' dispute

turns on whether the ALJ has provided specific, clear, and convincing reasons for rejecting plaintiff's testimony as to the severity of her symptoms. As stated above, the ALJ's conclusion that plaintiff was only partially credible turned primarily on two findings: (1) that Plaintiff's admitted activities of daily living conflicted with her alleged level of impairment, and (2) that plaintiff only partially complied with recommended treatment regimens, namely that she failed to go to physical therapy despite her doctors' recommendation of exercise and weight loss, her varied compliance with medical treatment, and that she had stopped seeing her mental health therapist. (Record at 26.) The Court finds none of these justifications specific, clear, and convincing.[3]

### 1. Activities of Daily Living

In support of his adverse credibility finding, the ALJ stated that plaintiff is "independent in self-care and activities of daily living," citing the entirety of her testimony, records from her mental health therapist, and Dr. Schwartz's report. (Record at 37-52, 394-398, 415-463.)

The Court finds that the ALJ's stated conclusion, without more, does not qualify as specific, clear, or convincing support for her adverse credibility finding. Rather than offer any "sufficiently specific" findings such that this Court may "conclude the adjudicator rejected the claimant's testimony on permissible grounds," *Bunnell*, 947 F.2d at 345–46 (internal quotation marks and citation omitted), the ALJ simply reproduced, without analysis, the great bulk of plaintiff's hearing testimony before offering her conclusion that plaintiff was only partially credible because she can complete self-care and activities of daily living independently. In so doing, the ALJ fails to explain how any specific activity is inconsistent with plaintiff's claimed

---

[3] As discussed in note 2, *supra*, perhaps due to the paucity of interpretation and analysis in the ALJ's decision, the Commissioner supplements the ALJ's decision by providing additional justifications. (*See, e.g.*, Deft. Mot. at 13-14 ("The ALJ based her credibility finding, in part, on the fact that Plaintiff described activities of daily living that were inconsistent with the impairments she alleged and with her testimony in general"; "Second, the ALJ found Plaintiff less than fully credible because the objective evidence in the record does not support Plaintiff's statements as to the intensity and persistency of her symptoms").) However, as discussed above and herein, the Court must review the ALJ's decision on its own terms and may not affirm the ALJ on a ground upon which the ALJ did not rely. Unless there are legitimate inferences to be drawn as to the ALJ's bases for her decision, the Court declines to rely on the Commissioner's independent arguments.

United States District Court
Northern District of California

United States District Court
Northern District of California

1  level of disability.  This falls short of "stat[ing] specifically *which symptom testimony* is not

2  credible and *what facts in the record* lead to that conclusion," which the ALJ was required to do.

3  *Smolen*, 80 F.3d at 1284 (emphasis supplied).

4      Furthermore, the Court notes that as reproduced in the ALJ's decision and as plaintiff

5  stated at the hearing, plaintiff *admitted* that she is functionally independent in terms of self-care.

6  She stated that she can shower and dress herself, but testified that her symptoms from

7  fibromyalgia and other impairments kept her from doing other things, like standing for lengths of

8  time, sitting for longer than 30 minutes, or walking.  (Record at 51-52.)  Put simply, the ALJ's

9  stated basis for discrediting plaintiff – that she is independent in activities of daily living and self-

10  care – is not on its face valid, for the ALJ has identified no inconsistency between her stated

11  ability level and her activities.  *See Reddick*, 157 F.3d at 722 ("Only if the level of activity were

12  inconsistent with Claimant's claimed limitations would these activities have any bearing on

13  Claimant's credibility.").

14      Several paragraphs further into her decision, after relating medical evidence of record

15  (without analyzing how such evidence bears on plaintiff's credibility or offering findings relating

16  thereto), the ALJ noted that plaintiff's statement that "she prefers to stay at home by herself" is

17  "not fully supported by the evidence."  This paragraph, found at the bottom of page 8 of the ALJ's

18  decision, is arguably the most analytical of all the paragraphs in the ALJ's RFC discussion.  But it,

19  too, lacks the specificity required to establish two things:  (1) that the ALJ was relating this

20  observation to a finding that plaintiff engages in activities of daily living that are inconsistent with

21  her claimed degree of impairment and is therefore only partially credible, and (2) that the evidence

22  upon which the ALJ relies for the finding that claimant may not "prefer to stay home," is in fact

23  contrary to that testimony.  On the first issue, the Court notes that nowhere has the ALJ stated a

24  finding that the nature of plaintiff's daily activities undermines her claimed degree of impairment

25  either generally or with respect to specific limitations.  The most that the ALJ can be said to have

26  determined with respect to plaintiff's daily activities is that the fact she can complete them

27  independently renders her only partially credible, which for the reasons stated above, the Court

28  finds insufficient.

On the second issue, the evidence the ALJ cites for the proposition that plaintiff might not "prefer to stay home" does not as a factual matter contradict plaintiff's claim that she prefers to stay home due to her illnesses. The Court notes that the evidence cited by the ALJ to support the suggestion that plaintiff might not actually "prefer to stay home" in fact establishes that she prefers to stay at home and only left the house in response to encouragement from her psychotherapist. (Record at 459 (Psychotherapist Note: "Whenever people call her to participate in activities she says "no." So we decided that she needs to replace "no" with "yes" because she has nothing to lose.").) On the whole, the weight and tone of the record evidence cited by the ALJ does not tip in favor of her finding that plaintiff did not actually "prefer to stay home," as plaintiff testified. As a practical matter, one can prefer to stay at home and still engage in other activities; there is no inherent inconsistency between plaintiff's statement and the evidence the ALJ identifies. Furthermore, while some evidence cited may support the notion that plaintiff may enjoy out-of-home activities, certain of the evidence cited in the support of the ALJ's finding does not appear to have any connection to plaintiff's desire to stay at home at all. (*Id*. at 27 ("On October 5, 2011, claimant reported that her car broke down and it took her son over a month to come over to do the repairs. She had left the church because things had changed.").) The paucity of both explanation and inferential connection as to how the evidence cited supports the ALJ's conclusion leaves the Court without basis to affirm the ALJ's decision.[4]

## 2. *Failure to Follow Recommended Treatment*

As an additional basis for finding plaintiff only partially credible, the ALJ noted that plaintiff had not been fully compliant with her doctors' recommendations. (Record at 26.) Specifically, the ALJ stated that plaintiff had stopped seeing her psychotherapist in December 2011 due to the fact that she could no longer find someone to drive her to his offices. (*Id*. at 25.)

---

[4] The Court further notes that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." *Reddick*, 157 F.3d at 722 (citing *Cohen*, 964 F.2d at 530–31 (ruling that a claimant should not be penalized for attempting to maintain some sense of normalcy in her life); *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) (noting that a disability claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits)).

1    She further found that although plaintiff had been advised by doctors to exercise and lose weight,

2    she was unable to join a gym for water therapy due to financial problems.  (*Id*. at 25; 46-47.)  The

3    ALJ further stated that plaintiff's "compliance with medical treatment has varied at times."  (*Id*. at

4    26.)

5          An ALJ may properly rely on "unexplained or inadequately explained failure to seek

6    treatment or to follow a prescribed course of treatment" in assessing a claimant's credibility.

7    *Johnson v. Colvin*, No. 5:13-CV-03967-RMW, 2015 WL 1501789, at *17 (N.D. Cal. Mar. 31,

8    2015) (citing *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012); *Tommasetti*, 533 F.3d at

9    1039).  According to agency rules, "the individual's statements may be less credible if the level or

10   frequency of treatment is inconsistent with the level of complaints, or if the medical reports or

11   records show that the individual is not following the treatment as prescribed and there are no good

12   reasons for this failure."  *Id.* (citing Social Security Ruling ("SSR") 96–7p[5]).

13         However, the Ninth Circuit has prohibited rejecting a claimant's symptom testimony

14   because of lack of treatment "when the record establishes that the claimant could not afford it."

15   *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1999) (citing *Smolen*,

16   80 F.3d at 1284).  Social Security Ruling 96–7p also requires that the ALJ "not draw any

17   inferences about an individual's symptoms and their functional effects from a failure to seek or

18   pursue regular medical treatment without first considering any explanations that the individual

19   may provide," and lists inability to afford treatment or access to free or low-costs medical services

20   as possible explanations.  SSR 96–7P, 1996 WL 374186 (July 2, 1996).

21         The Court finds that the ALJ failed to consider plaintiff's inability to afford or access the

22   treatment recommended by her doctors.  First, plaintiff testified that her physical therapists wanted

23   her to do water exercises, but that due to financial constraints, she could not access a pool.  (*See*

24   Record at 46-47.)  There is no evidence in the record that this was not true.  If anything, record

25

26   ——————————————————

27          [5] SSRs do not have the same force and effect as statutes or regulations, but they are
     binding on all components of the Social Security Administration.  *Sorrel*, No. 13-CV-04874-SI,
28   2015 WL 1152781, at *7 n.12 (citing 20 C.F.R. § 402.35(b)(1)).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    evidence corroborates plaintiff's claim of severe financial hardship.  In her psychotherapist's

2    records, her doctor recounted the history of plaintiff's depression, which started soon after her

3    husband died unexpectedly of a heart attack at age 43.  (Record at 451.)  She was unable to work

4    at the postal service, where she had been employed for eighteen years, and was put off of work for

5    a year.  When she could not obtain her doctor's approval to return to work, she was forced into

6    retirement.  Because she could not work and was never approved for long term disability, "money

7    became an issue and continues to be so."  (Record at 451.)  More recently, when her car broke

8    down, plaintiff could only afford to hire her son to fix it.  It took a month for him to come over to

9    do the repair, and the part cost her $300.  (Record at 423.)  There is nothing in the ALJ's decision

10   to suggest that the ALJ considered this evidence in finding plaintiff less than credible for failing to

11   exercise.

12        Similarly, there is arguably a "good reason" for plaintiff's discontinued psychotherapy.

13   Her therapist's office is in Vacaville, and she could not find someone to drive her to these

14   appointments.  (Record at 48.)  The Commissioner points out that plaintiff was able to obtain other

15   medical treatment and suggests that plaintiff's stated reason for discontinuing psychotherapy is

16   unfounded.  (Deft. Mot. at 15.)  But the records show that on the whole, such treatment took place

17   in Vallejo, where plaintiff lives, and not Vacaville.  (*See, e.g*., Record at 464-646; 658-847; 904-

18   1286 (medical evidence of record from Kaiser Permanente Vallejo between 2009 and 2012).)

19   There is nothing in the ALJ's decision to suggest that the ALJ considered this evidence in finding

20   plaintiff less than credible for failing to continue with psychotherapy.

21        Finally, the ALJ stated that plaintiff's compliance with her medical treatment has varied at

22   times.  A straightforward reading of the ALJ's decision does not shed light on precisely what

23   evidence forms the basis for this conclusion, other than the two specific issues described above,

24   which the Court finds insufficient to support the ALJ's adverse credibility determination.  Nor

25   does the ALJ explain how this finding bears on plaintiff's credibility.  Thus, as to this stated

26   reason, the ALJ has again failed to meet her burden.

27                                           ***

28        For these reasons, plaintiff's motion for summary judgment on this issue is **GRANTED**.  On

United States District Court
Northern District of California

1  remand, the ALJ must reevaluate plaintiff's credibility.  In doing so, the ALJ may consider

2  inconsistencies either in plaintiff's testimony or between her testimony and conduct; "unexplained

3  or inadequately explained failure to seek treatment or to follow a prescribed course of treatment";

4  and "whether the claimant engages in daily activities inconsistent with the alleged symptoms."

5  *Molina*, 674 F.3d at 1112 (internal quotations and citations omitted).  Finally, the ALJ shall give

6  "specific, clear and convincing reasons" in order to reject the claimant's testimony about the

7  severity of the symptoms.  *Id.*  Put differently, the ALJ shall "state specifically which symptom

8  testimony is not credible and what facts in the record lead to that conclusion."  *Smolen*, 80 F.3d at

9  1284.

10  **E.  Vocational Expert Testimony**

11  Plaintiff argues that the questions posed to the vocational expert at the hearing were

12  deficient insofar as the ALJ's RFC determination was not fully represented by the hypothetical

13  questions.  The substance of plaintiff's argument stems from her contention that the RFC

14  determination was flawed because the ALJ did not properly consider plaintiff's stated limitations,

15  the opinions of Drs. Gratton and Hefner, and the first's ALJ's RFC finding.  As set forth above,

16  the Court agrees with plaintiff as to two of these three arguments. Therefore, on remand, the ALJ

17  must revisit to what degree the opinions of plaintiff's treating physician and evaluating

18  rheumatologist should be credited, and plaintiff's credibility, which formed the basis for her

19  ultimate RFC.  Upon further proceedings in this case on remand and consideration of the record

20  evidence, that RFC may change.  Accordingly, the Court need not address the propriety of specific

21  questions posed to the vocational expert based on the ALJ's flawed RFC.

22  **V.  REMAND FOR FURTHER PROCEEDINGS**

23  In her papers, plaintiff argues that the Court should exercise its discretion to remand for an

24  award of benefits.  The Court disagrees.

25  The Ninth Circuit applies "a three-part credit-as-true standard, each part of which must be

26  satisfied in order for a court to remand to an ALJ with instructions to calculate and award

27  benefits."  *Garrison*, 759 F.3d at 1020.  The standard is met where "(1) the record has been fully

28  developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has

failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Id.* (footnote and citations omitted). If, however, "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled," remand for further proceedings is appropriate, "even though all conditions of the credit-as-true rule are satisfied." *Id.* at 1021.

Based on the record before it, the Court concludes that there remains substantial ambiguity and doubt as to whether plaintiff is, in fact, disabled. Thus, as to the question of whether further administrative proceedings would be useful under the above-stated test, the Court finds that a remand for further administrative proceedings is proper. As the Ninth Circuit stated recently in *Treichler v. Commissioner of Social Security Administration*, when "evaluating this issue, we consider whether the record as a whole is free from conflicts, ambiguities, or gaps, whether all factual issues have been resolved, and whether the claimant's entitlement to benefits is clear under the applicable legal rules." 775 F.3d 1090, 1103-04 (9th Cir. 2014) (citation omitted).

Here, even crediting as true the opinions of Drs. Hefner and Gratton, there remains substantial evidence in the record that conflicts with those opinions. Specifically, the opinions of Dr. Schwartz and Dr. Eskander offer conflicting assessments of plaintiff's level of physical ability and the impact of her symptoms on her ability to stand, sit, and ambulate. The state of this record also "raises crucial questions as to the extent of [plaintiff's] impairment given inconsistencies between [her] testimony and the medical evidence in the record. These are exactly the sort of issues that should be remanded to the agency for further proceedings." *Treichler*, 775 F.3d at 1105 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). Although for the reasons stated above, the Court has found that the ALJ made legal errors, the record is nonetheless "uncertain and ambiguous, [and] the proper approach is to remand the case to the agency." *Id.*

## VI.   CONCLUSION

For the reasons stated above, plaintiff's motion for summary judgment is **GRANTED IN PART** and defendant's cross-motion for summary judgment is **DENIED IN PART**. This action is hereby **REMANDED** to the ALJ for further proceedings consistent with this order. Judgment will be

United States District Court
Northern District of California

entered accordingly.

**IT IS SO ORDERED.**

Dated:  May 28, 2015

_____

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**